11 MISC 00253

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

MMX Corumbá Mineração S.A. and
MMX Metálicos Corumbá Ltda.,

                          **Plaintiffs**

v.

Fluviomar International Ltd.,

                          **Defendant.**

------------------------------------------------------------- x

Case No. M-

RECEIVED
JUL 21 2011
U.S.D.C. S.D. N.Y.
CASHIERS

## NOTICE OF MOTION TO VACATE OR, IN
## THE ALTERNATIVE, MODIFY ARBITRATION AWARD

**PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of Law, dated

July 20, 2011, the accompanying Declaration of Laurence Shore, dated July 20, 2011, together

with the exhibits thereto, and the accompanying Declaration of Timothy Hart, dated July 20,

2011, together with exhibits thereto, Plaintiffs MMX Corumbá Mineração S.A. and MMX

Metálicos Corumbá Ltda. (collectively, "MMX" or "Plaintiffs"), by and through undersigned

counsel, will move this Court, at the Daniel Patrick Moynihan United States Courthouse, 500

Pearl Street, New York, New York 10007-1312, at a date and time to be determined by this

Court, for an order (1) pursuant to 9 U.S.C. §§ 10(a)(3) or 10(a)(4) vacating the arbitral award

issued by the Society for Maritime Arbitrators on June 30, 2011, in the matter of Fluviomar

International Ltd. v. MMX Corumbá Mineração S.A. and MMX Metálicos Corumbá Ltda.

("SMA Award"), for the award of damages on a matter of which Plaintiffs had no notice and no

opportunity to address; or, in the alternative, (2) pursuant to 9 U.S.C. § 11(a) modifying the

SMA Award due to the evident material miscalculation of prejudgment interest by reducing the award to Fluviomar by (a) $2.98 million or (b) $2.02 million.

PLEASE TAKE FURTHER NOTICE that, answering papers, if any, are to be served on counsel for the plaintiffs on or before August 4, 2011 and reply papers, if any, are to be served on or before August 11, 2011.

Dated:   July 21, 2011
         New York, New York                 Respectfully submitted,

                                            GIBSON, DUNN & CRUTCHER LLP

                                            By:  _Laurence Shore_____
                                                 Laurence Shore (LS-0518)
                                            200 Park Avenue
                                            New York, New York 10166-0193
                                            Telephone: 212.351.4000
                                            Facsimile:  212.351.4035

                                            Cyrus Benson (CB-0705)
                                            2-4 Temple Avenue
                                            London EC4Y 0HB
                                            Telephone: +44 20 7071 4000
                                            Facsimile:  +44 40 7071 4244

                                            *Attorneys for Plaintiffs MMX Corumbá*
                                            *Mineração S.A. and MMX Metálicos*
                                            *Corumbá Ltda.*

11 MISC 00253

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                              :

MMX Corumbá Mineração S.A. and
MMX Metálicos Corumbá Ltda.,               :    Case No. M-

                        Plaintiffs      :

v.                                     :

Fluviomar International Ltd.,             :

                        Defendant.     :

---------------------------------------------------------------- x

RECEIVED
JUL 21 2011
U.S.D.C. S.D.N.Y.
CASHIERS

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE
OR, IN THE ALTERNATIVE, MODIFY ARBITRATION AWARD**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiffs MMX Corumbá Mineração
S.A. and MMX Metálicos Corumbá Ltda.*

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL BACKGROUND ................................................................................3

III.   ARGUMENT .......................................................................................................7

    A.    The Panel's Award of Prejudgment Interest was Actually a Damages
        Award, Exceeding Its Authority under the Federal Arbitration Act and
        New York Law.............................................................................................8

        1.    The Discrete Damages Award Improperly Transforms
            Prejudgment Interest into a Separate Damages Award..............................8

        2.    The Section 11 Interest Rate and Discrete Damages Were Never
            Claimed or Argued Before the Panel, and the Award of Discrete
            Damages Violates Fundamental Fairness ..................................................10

            a.    The Panel's Failure to Give the Parties the Opportunity to
                Address the Discrete Damages Violates § 10(a)(3) of the
                Federal Arbitration Act. ................................................................11

            b.    By Imposing the Discrete Damages, the Panel Exceeded Its
                Powers in Violation of § 10(a)(4) of the Federal Arbitration
                Act.................................................................................................11

    B.    Alternatively, the Panel's Calculation of Prejudgment Interest Is, On Its
        Face, a Material Miscalculation That Requires Modification of the SMA
        Award under § 11(a) of the Federal Arbitration Act. ..............................13

        1.    The SMA Award Failed to Calculate Interest on MMX's Damages,
            Which Accrued Two Years before Fluviomar's Damages .......................13

        2.    The SMA Award Incorrectly Awarded Interest Starting from June
            2009 for Fluviomar's Wrongful Termination Award. ............................15

IV.    CONCLUSION...................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### Cases

*Adrian v. Town of Yorktown,*
   620 F.3d 104 (2d Cir. 2010) ........................................................................... 15

*Capgemini U.S. LLC v. Sorenson,*
   No. 04 Civ. 7584(JGK), 2005 WL 1560482 (S.D.N.Y. July 1, 2005) ........................ 11, 12

*Chandler v. Bombardier Capital, Inc.,*
   44 F.3d 80 (2d Cir. 1994) ........................................................................... 9, 15

*Collins & Aikman Floor Coverings Corp. v. Froehlich,*
   736 F. Supp. 480 (S.D.N.Y. 1990) ................................................................. 12, 13

*Constructive Hands v. Baker,*
   446 F. Supp. 2d 88 (N.D.N.Y. 2006) ................................................................. 8, 9

*Hartford Fin. Holdings, Inc. v. Singer,*
   2010 WL 1838843 (S.D.N.Y. May 4, 2010) ............................................................. 13

*Morse/Diesel, Inc. v. Trinity Indus., Inc.,*
   No. 84 Civ. 5791 RO, 1997 WL 470138 (S.D.N.Y. Aug. 14, 1997) .............................. 14

*NML Capital v. Republic of Argentina,*
   2011 WL 2567294 (N.Y. June 30, 2011) ................................................................. 15

*NML Capital v. Republic of Argentina,*
   621 F.3d 230 (2d Cir. 2010), *aff'd on certification in* 2011 WL 2567294 (N.Y. June
   30, 2011) ........................................................................................................ 13

*Refino v. Feuer Transp., Inc.,*
   480 F. Supp. 562 (S.D.N.Y. 1979) ......................................................................... 12

*Reilly v. Natwest Mkts. Group, Inc.,*
   181 F.3d 253 (2d Cir. 1999) ............................................................................... 16

*Riko Ent. v. Seattle Supersonics Corp.,*
   357 F. Supp. 521 (S.D.N.Y. 1973) ......................................................................... 13

*Shorter v. Hartford Fin. Servs. Group, Inc.,*
   No. 3:03 CV 0149 WIG, 2005 WL 2234507 (D. Conn. May 31, 2005) .......................... 16

*State of Kan. v. State of Colo.,*
   2000 WL 34508307 (U.S. Aug. 31, 2000) ............................................................... 15

*Studiengesellschaft Kohle mbh v. Novamont Corp.,*
   548 F. Supp. 234 (S.D.N.Y. 1981) ......................................................................... 14

*The DOLE CALIFORNIA,*
   S.M.A. No 3986 (2007) ................................................................................... 8, 9

*Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*,
    607 F.2d 649 (5th Cir. 1979) ............................................................ 12, 13

*Yonir Tech., Inc. v. Duration Sys. (1992) Ltd.*,
    244 F. Supp. 2d 195 (S.D.N.Y. 2002) ................................................ 11

**Statutes**

9 U.S.C. § 10(a)(3) ............................................................................. 1, 3, 11

9 U.S.C. § 10(a)(4) ....................................................................... 1, 3, 11, 12

9 U.S.C. § 11 ........................................................................................... 15

9 U.S.C. § 11(a) ....................................................................................... 1

9 U.S.C. § 11(b) ..................................................................................... 13

N.Y. C.P.L.R. 5001(a) ............................................................................ 15

N.Y. C.P.L.R. 5004 (McKinney 2007) ...................................................... 9

N.Y.C.P.L.R. 5001(b) ............................................................................ 15

# I.   INTRODUCTION

On June 30, 2011, an arbitral tribunal (the "Panel") constituted under the Society of Maritime Arbitrators ("SMA") rules, issued an award of $11,153,555 in principal and $4,037,279 in interest (the "SMA Award") in favor of Fluviomar International Ltd. ("Fluviomar").[1]   Plaintiffs MMX Corumbá Mineração S.A. ("MMX Corumbá"), formerly denominated and the successor-in-interest of MMX Corumbá Mineração Ltda., and MMX Metálicos Corumbá Ltda. ("MMX Metálicos"), formerly denominated and successor-in-interest to MMX Metálicos Brasil Ltda. (collectively "MMX" or "Plaintiffs"), move to vacate or, in the alternative, modify this SMA Award pursuant to 9 U.S.C. §§ 10(a)(3), 10(a)(4) and 11(a).   The SMA Award of more than $4 million in interest, while ostensibly "prejudgment interest" since it covers the period from a date of breach (as found by the Panel) to the date of the SMA Award,[2] should be vacated because it actually introduced a new count of damages without giving the parties an opportunity to be heard on whether such damages should be awarded.   Alternatively, the SMA Award should be modified:  on the face of the SMA Award, even assuming that 18% interest was applicable as prejudgment interest, the Panel materially miscalculated the amount of interest due to Fluviomar.

---

[1]   As explained below, the Panel awarded Fluviomar $14,065,429 in principal for wrongful termination, demurrage and detention damages, and awarded MMX $2,911,874 in principal for Fluviomar's shortliftings of cargo in 2007 and 2008.  As a result, the SMA Panel found MMX liable for a net amount in principal of $11,153,555.  The SMA Award is attached to the Declaration of Laurence Shore, dated July 20, 2011 ("Shore Decl."), as Exhibit A. Unless otherwise indicated, all Exhibit references ("Exh.") are to the Shore Decl.

[2]   The date of the wrongful termination breach, as found by the Panel, was June 26, 2009. Interest of 18% was awarded from this date to the date of the SMA Award, June 30, 2011. Exh. A at 55.

*Vacatur: Section 10, Federal Arbitration Act*

While the SMA Award purports to apply prejudgment interest on the net principal awarded, in reality the Panel did no such thing.  Instead of applying prejudgment interest, which would compensate Fluviomar for the time-value of the principal owed in damages for wrongful termination, the Panel explicitly applied the interest rate in Section 11 of the Contract of Affreightment–River Transportation, entered into between MMX and Fluviomar on October 27, 2006 ("COA"), the purpose of which was to deter late or non-payment of overdue invoices by charging a prohibitive monthly interest rate of 1.5% (the "Section 11 Interest Rate").  However, the wrongful termination breach found by the Panel had nothing to do with unpaid or overdue invoices.

It cannot be disputed that the Section 11 Interest Rate, amounting to an annual rate of 18%, does something other than compensate for the time-value of money withheld.  The $4,037,279 awarded by the Panel as prejudgment interest cannot, on its face, be understood as prejudgment interest.  The time-value for Fluviomar's money is significantly less than 18%.  By way of illustration, the undisputed record in this case shows that Fluviomar was able to borrow funds from MMX at a six-month LIBOR rate plus 3%.  *See* Exh. C.  This rate fluctuated between 8.4% in 2007 to 3.4% in June 2011.  *See* Declaration of Timothy Hart, dated July 20, 2011 ("Hart Declaration").

Thus, by applying the Section 11 Interest Rate, the Panel has effectively awarded Fluviomar relief under an additional, separate count of damages, distinct from prejudgment interest—a count that neither party requested or had an opportunity to address.  While arbitral tribunals are afforded wide discretion to determine an interest rate that they deem appropriate, arbitrators exceed their powers when they introduce and award an item of damages that was

never requested and on which the parties had no opportunity to be heard.  Accordingly, the SMA
Award should be vacated under 9 U.S.C. §§ 10(a)(3) and (4).

*Modification:  Section 11, Federal Arbitration Act*

In the alternative, should the Court decide not to vacate the SMA Award, MMX
respectfully requests modification under Section 11 of the Federal Arbitration Act because the
Panel materially miscalculated interest.  The Panel awarded damages to Fluviomar and to
MMX—for Fluviomar's breaches of the COA in 2007-2008—but its prejudgment interest
calculation was only applied to Fluviomar's recovery.  The Panel applied prejudgment interest to
the entire net amount of principal awarded to Fluviomar starting on June 26, 2009, until the date
of the SMA Award.  However, according to the SMA Award, MMX incurred damages two years
earlier than Fluviomar, meaning that MMX's losses accrued interest for two more years than
Fluviomar's losses.  The Panel's calculation fails to take this crucial point into account.

Moreover, the Panel calculated interest on the entire amount of Fluviomar's recoveries
starting from June 26, 2009, even though the vast majority of Fluviomar's damages occurred
*after* that date.  By determining the net amount of damages prior to applying interest, instead of
first applying interest to each party's recovery, the Panel materially miscalculated the amount
due by MMX.  *See* Hart Declaration.  If the Section 11 Interest Rate is applied, and prejudgment
interest is properly calculated, the total net award to Fluviomar should be reduced by **$2.02
million**.  If the New York statutory prejudgment interest rate of 9% is applied instead of the 18%
rate, the total net award to Fluviomar should be reduced by **$2.98 million**.

## II.    FACTUAL BACKGROUND

On October 27, 2006, MMX and Fluviomar entered into the COA for the transportation
of iron ore and pig iron from Ladário, Brazil, to Argentina or Paraguay on the Paraná River.
Under the COA, Fluviomar was obligated to transport 1,000,000 metric tons ("MT"), plus or

3

minus 10%, per year, of MMX cargo for five years at a rate of 83,333 MT per month. Exh. B §§ 2, 3.[3]

From the outset of the COA, Fluviomar failed to meet the contractual tonnage requirements. "From January through September 2007 Fluviomar transported a total of 410,044 MT of MMX COA cargo," less than half the amount stipulated in the COA. *See* Exh. A at 8. This breach continued in 2008, as from "January through September 2008 Fluviomar moved fewer of MMX's cargoes than during the same period in 2007, transporting total cargoes of 355,809 MT." *Id.*

To mitigate Fluviomar's shortliftings, MMX entered into agreements with two other companies for the shipment of its cargo: UABL in July 2007 and Uninoble in 2008. *See id.* at 11. These two companies carried a total of 176,422 MT of iron ore from Ladario to Argentine ports in 2007 and 771,676 MT of iron ore and pig iron during the first nine months of 2008. *See id.*

Fluviomar lifted no iron ore or pig iron for MMX in 2009 and after. *See id.* at 18. On June 26, 2009, MMX terminated the COA and Loan Agreement.

Section 15 of the COA provides for arbitration in New York pursuant to the Rules of the SMA. Section 15 also provided that the procedure of the arbitration shall apply "the laws of the state of New York, United States of America." *Id.*[4]

---

[3]    On the same day, the parties also entered into an Agreement for Advance of Freight Charges ("Loan Agreement") by which MMX loaned Fluviomar nearly $10 million to assist Fluviomar in performing its COA obligations (the "Loan"). *See* Exh. C.

[4]    In the Loan Agreement, however, the parties agreed to an exclusive jurisdiction clause requiring "any controversy" arising out of the Loan Agreement to be "submitted to the courts in the city of New York, United States of America." *See* Exh. C § 11.

Fluviomar commenced SMA arbitration in New York on January 19, 2010.  *See* Exh. E. It claimed damages for wrongful termination of the COA, demurrage and detention.  In its pre-hearing brief, Fluviomar claimed more than $104 million in damages.  *See* Exh. G.  MMX denied the wrongful termination, demurrage and detention claims, and counterclaimed on March 2, 2010, for damages for Fluviomar's shortliftings and breaches of the COA in 2007 and 2008. *See* Exh. F.

Fluviomar appointed Anthony J. Siciliano as one co-arbitrator and MMX appointed Alejandro M. Garro.  The parties requested the United States District Court of the Southern District of New York to appoint the chair.  The Honorable Richard M. Berman appointed Michael Marks Cohen as the third arbitrator and chair of the SMA Panel.[5]

The SMA Panel held an oral hearing on August 23, 24 and 25, 2010.  MMX and Fluviomar submitted post-hearing briefs on November 30, 2010, and reply briefs on December 22, 2010.  Chairman Cohen closed the proceedings on evidence on December 30, 2010.  Exh. A at 20-21.

Pursuant to SMA Rules § 28, the Panel "has the collective duty to issue awards not later than 120 days after the final evidence or brief has been received."[6]  Exh. D.  However, the Panel

---

[5]   Exh. A at 20.   Concurrently, MMX brought a claim in New York state court for the collection of the Loan from Fluviomar.  The Panel agreed that the subject matter of the Arbitration would be limited to the COA.  On January 20, 2011, the parties informed the Panel that "Fluviomar paid the full outstanding amount of the Loan . . . to MMX on January 20, 2011," and that the parties had resolved the Loan Agreement dispute.  Accordingly, the New York state court action was dismissed with prejudice on January 28, 2011.  *See* Exhs. N, O, P.

[6]   SMA Rules add that failure of a panel to abide by the provisions in § 28 "shall not be grounds for challenge of the Award."  *See* Exh. D.

was unable to meet this time frame and issued the SMA Award on June 30, 2011. *See* Exh. A at 57.

The Panel found that Fluviomar should be awarded damages for wrongful termination, demurrage and detention, as follows: $10,406,000 for wrongful termination ($7,686,250 in 2009 and $2,719,750 in 2010); $1,944,000 for demurrage; and $1,715,429 for detention. In total, the Panel awarded Fluviomar $14,065,429 in damages. In turn, the Panel awarded MMX $2,911,874 in damages for Fluviomar's contractual breaches during 2007 and 2008, and subtracted this amount from the damages award to Fluviomar, leaving $11,153,555, as the award to Fluviomar *before* any interest was calculated. *See* Exh. A at 55. The Panel determined that no attorneys' fees would be awarded to either side. *See id.* at 53.

The Panel additionally awarded Fluviomar $4,037,279, which the Panel characterized as interest on the entire $11 million from June 26, 2009 to the date of the SMA Award, at a rate of 18% per annum. The Panel adopted the interest rate denoted in COA § 11 for any "unpaid invoice." That is to say, instead of using a statutory prejudgment interest rate or an interest rate set to compensate for the time-value of money withheld, the Panel applied the unpaid invoice interest rate set to deter late or non-payment of invoices. *See* Exh. A at 3 (noting that the COA is governed by New York law). However, the wrongful termination breach found by the Panel had nothing to do with an unpaid or late invoice. Moreover, the Panel applied no interest on MMX's recoveries for Fluviomar's breaches in 2007-2008. The SMA Award reads:

### 5. Fluviomar is Entitled to Interest on the Net Difference Between Its Recoveries Under This Award and MMX's Recoveries

Section 11 of the COA provides that monthly interest at the rate of 1.5% shall accrue upon any "unpaid invoice". This is not an uncommon rate in commercial contracts subject to New York law and both courts and arbitrators have awarded it. *See e.g. Constructive Hands v. Baker*, 446 F. Supp. 2d 88 (N.D.N.Y. 2006); *The DOLE CALIFORNIA*, S.M.A. No 3986 (2007).

> The [Panel] sets off all sums awarded to MMX herein against all sums awarded to Fluviomar and grants Fluviomar simple interest at the rate of 18% per annum on the net Award, representing the difference, running from June 26, 2009 until the date of this Award.  If the Award is not paid within 30 days after the date of this Award, interest shall resume from the date of this Award at 18% per annum on the any unpaid balance of the net Award until it is paid in full or confirmed in a judgment of a court of competent jurisdiction.

*Id.* at 53.

Section 11 of the COA sets the terms for the freight charges.  The unpaid invoice rate is set out as follows:

> Against delivery of the Bills of Lading or 7 days after the date of the invoice, the entire freight shall be credited to the CARRIER, without deduction for loss of or damage to a portion of the entire cargo at any stage of the voyage.  The freight shall be calculated based on the quantity of loaded tons and declared in the Bills of Lading.  Any freight, demurrage or other expenses shall be paid in cash, in dollars of the United States of America and shall be made by electronic bank transfer, pursuant to written instructions from the CARRIER to the SHIPPER 15 days in advance, or pursuant to other instructions which the CARRIER might provide in the same manner.  Unpaid total or portions of the invoice shall bear interest at the rate of one-and-a-half percent (1.5%) monthly.

Exh. B.

## III.   ARGUMENT

By applying the Section 11 Interest Rate instead of a rate that would have compensated for the time-value of damages awarded, the Panel actually introduced a new and discrete count of relief ("Discrete Damages"), rather than awarding prejudgment interest.  The Discrete Damages are clearly not compensatory:  they are for an amount that is 36% of the pre-interest net award and are derived from fines that would normally be charged for unpaid invoices while the parties are continuing their relationship under the COA.  The Panel thus awarded a new count of relief to Fluviomar without notifying the parties and giving them the opportunity to argue whether such damages should be awarded.

Alternatively, the Panel erred in two material ways in calculating the amount of interest. First, the Panel's approach was to sum up the pre-interest net award owed to Fluviomar by subtracting MMX's damages from Fluviomar's. The Panel did not accord prejudgment interest to MMX's damages. In so doing, it is apparent on the face of the SMA Award that the Panel did not take into account that MMX's damages were incurred in 2007-2008, whereas a significant portion of Fluviomar's damages arose, by the SMA Award's own terms, after June 2009. *See* Exh. A at 36-42. Second, although the vast majority of Fluviomar's damages had not started to accrue on June 26, 2009, the Panel nonetheless applied the Section 11 Interest Rate to the entire pre-interest award for the period from June 26, 2009, the date of termination, through June 30, 2011, the date of the SMA Award. Indeed, in the Panel's own analysis in the SMA Award, Fluviomar incurred the wrongful termination damages over a ten-month period *following* June 26, 2009, not as of June 26, 2009. *See id.* The Panel's calculation of prejudgment interest is therefore, on its face, a material miscalculation.

A.   **The Panel's Award of Prejudgment Interest was Actually a Damages Award, Exceeding Its Authority under the Federal Arbitration Act and New York Law.**

   1.   **The Discrete Damages Award Improperly Transforms Prejudgment Interest into a Separate Damages Award.**

The Panel stated that applying Section 11's monthly 1.5% rate was a reasonable exercise of its discretion because it was "not an uncommon rate in commercial contracts subject to New York law." But the cases cited by the Panel—*Constructive Hands v. Baker*, 446 F. Supp. 2d 88 (N.D.N.Y. 2006) and *The DOLE CALIFORNIA*, S.M.A. No 3986 (2007)—do not in any way justify the Panel's interposition of a new count of damages. In both *Constructive Hands* and

*THE DOLE CALIFORNIA*, unpaid invoices for services rendered were at issue.[7]  Neither case applied an unpaid invoice interest rate, designed to deter parties from not paying overdue invoices while the parties are in an ongoing contractual relationship, to damages for wrongful termination—designed to put the parties in the position they would have been in had the wrongful termination not occurred.

The Section 11 Interest Rate was awarded "from June 26, 2009 until the date of this Award."  Exh. A at 53.  Setting the end of the interest calculation to the "date of the Award" demonstrates that the SMA Award interest was issued as prejudgment interest—but on the basis of an unpaid invoice interest rate.  "The purpose of a prejudgment interest award in a wrongful termination case is to compensate a plaintiff for the loss of use of money that the plaintiff otherwise would have earned had he not been unjustly discharged."  *Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 83 (2d Cir. 1994).   However, the Discrete Damages are not compensatory.  In applying an interest rate designed to penalize non-payment of invoices and which were twice the rate of New York's 9% statutory interest rate, N.Y. C.P.L.R. 5004 (MCKINNEY 2007), the Panel awarded Fluviomar relief that had no relation to and was far greater than what Fluviomar lost from MMX's wrongful termination.  The Panel entered, with no notice, a new count of damages that no party claimed and no parties ever addressed.   Above all, MMX was not given the opportunity to address this new count of damages.

_____

[7]   In *Constructive Hands v. Baker*, 446 F. Supp. 2d 88 (N.D.N.Y. 2006), plaintiff boat repairer brought an action for and sought payment of interest for the repair of defendant's boat at an 18% annual rate.  Plaintiff had established an interest rate of 1.5% per month for overdue bills.  *Id.* at 96.  In *The DOLE CALIFORNIA*, S.M.A. No. 3986 (2007), claimant charged owner of underpaying invoices owed and sought recovery of this amount plus accrued interest of 1.5% per month as stipulated in the contract for all unpaid invoices.

In short, by using the unpaid invoice interest rate in Section 11—despite no findings of any unpaid invoices regarding wrongful termination—the SMA Award improperly granted a new count of damages to Fluviomar, without having ever heard either party on whether this new count of damages should be awarded in this case. The Panel exceeded its powers in issuing a damages award on a count that was not pleaded by Fluviomar and which neither party addressed or had the opportunity to address at any point in the arbitration.

### 2. The Section 11 Interest Rate and Discrete Damages Were Never Claimed or Argued Before the Panel, and the Award of Discrete Damages Violates Fundamental Fairness

Given the Panel's application of the prohibitive interest rate, imposition of interest at the date of termination instead of when the damages actually incurred, and the fact that interest accounts for over 36% of the net, pre-interest award, the award of $4 million should be construed by the Court as the imposition of a new discrete count of damages by the Panel. The $4 million "interest" award has nothing to do with compensatory damages as claimed or presented in the SMA arbitration and cannot be justified as prejudgment interest.

Fluviomar's arbitration demand, pre-hearing memorandum, post-hearing memorandum and post-hearing reply did not contain any reference to the Section 11 Interest Rate or any damages other than compensatory damages for its three heads of claims: wrongful termination, demurrage, and detention. *See* Exhs. E, G, H, I, M. Fluviomar never argued that it issued any unpaid invoices for its wrongful termination, demurrage or detention claims, and never requested the Panel to apply a prohibitive or punitive rate. Similarly, MMX's submissions therefore did not discuss the Section 11 Interest Rate. *See* Exhs. J, K, L, M. Neither the parties nor the arbitrators made any mention of the Section 11 Interest Rate or any other similarly punitive rate at the hearing. MMX was not afforded an opportunity to argue the issue before the Panel, which constitutes grounds for vacating the SMA Award.

10

    **a.**    **The Panel's Failure to Give the Parties the Opportunity to Address the Discrete Damages Violates § 10(a)(3) of the Federal Arbitration Act.**

Under 9 U.S.C. § 10(a)(3), an arbitration award must be vacated "where the arbitrators were guilty of misconduct . . . or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." "[A]n arbitrator must give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Capgemini U.S. LLC v. Sorenson*, No. 04 Civ. 7584(JGK), 2005 WL 1560482, at *4 (S.D.N.Y. July 1, 2005) (quotation marks and citation omitted). Axiomatic to the analysis is whether the arbitrators provided the parties with notice and an opportunity to be heard. *See Yonir Techs., Inc. v. Duration Sys. (1992) Ltd.*, 244 F. Supp. 2d 195, 208 (S.D.N.Y. 2002) ("[T]there is a general requirement under New York law that arbitration procedures comport with due process of law by providing a party with notice and an opportunity to be heard."). Fundamental fairness and due process "requires that each party have an opportunity to present its evidence and argument." *Id.* at 208-09.

The Panel denied due process to MMX by awarding the Discrete Damages without holding arguments on the matter. As a practical matter, the Panel refused to "hear evidence pertinent and material to the controversy" when it included the Discrete Damages in the SMA Award. This denial of fundamental fairness requires vacatur, and Plaintiffs respectfully request that the SMA Award be vacated pursuant to 9 U.S.C. § 10(a)(3).

    **b.**    **By Imposing the Discrete Damages, the Panel Exceeded Its Powers in Violation of § 10(a)(4) of the Federal Arbitration Act**

Under 9 U.S.C. § 10(a)(4), an award must be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." "The court's inquiry under § 10(a)(4) focuses on

whether the arbitrators had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Capgemini*, 2005 WL 1560482, at *4 (quotation marks omitted).   Aptly, "when the proof submitted at the hearing does not support the award, it should be set aside." *Collins & Aikman Floor Coverings Corp. v. Froehlich*, 736 F. Supp. 480, 487 (S.D.N.Y. 1990).   If an award is an "arbitrator[s'] own brand of justice," then that award must be vacated pursuant to § 10(a)(4). *Capgemini*, 2005 WL 1560482, at *4 (quotation marks omitted); *see also Refino v. Feuer Transp., Inc.*, 480 F. Supp. 562, 565 (S.D.N.Y. 1979) ("the New York Court of Appeals to which the courts in this circuit may turn for helpful teachings in arbitration matters, has held that an award may be set aside when an arbitrator behaves so capriciously as to exceed his power") (internal citations omitted).   Awards that are completely irrational must also be vacated. *See Collins*, 736 F. Supp. at 487 ("Awarding damages in the sum of $152,643.52, an amount not subject to calculation, is irrational under the provisions of 9 U.S.C. § 10[(a)(4)].").

Given that neither party discussed or argued the use of the Section Interest 11 Rate or the Discrete Damages (or any remedy akin to it), the issues were not submitted for adjudication by the Panel and the Panel exceeded its powers in awarding the Discrete Damages. *Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979), is on point.   In *Totem*, the arbitration panel awarded a party a count of damages that petitioner never made a claim for and respondent never prepared a case against such damages.   Noting that "[a]ll parties in an arbitration proceeding are entitled to notice and an opportunity to be heard" and that "[a]lthough arbitrators enjoy a broad grant of authority to fashion remedies, arbitrators are restricted to those issues submitted" (*id.* at 651), the circuit court vacated the award because "the arbitrators exceeded their powers." *Id.*   Since arbitrators cannot apply a remedy that the parties did not

contemplate, the Court should vacate the award pursuant to 9 U.S.C. § 10(a)(3). *See id.*; *see also Collins*, 736 F. Supp. at 487; *Riko Enters., Inc. v. Seattle Supersonics Corp.*, 357 F. Supp. 521, 525 (S.D.N.Y. 1973) (vacating an arbitration award when an arbitrator imposed a contractually provided penalty that the arbitrator was not empowered to impose).[8]

### B. Alternatively, the Panel's Calculation of Prejudgment Interest Is, On Its Face, a Material Miscalculation That Requires Modification of the SMA Award under § 11(a) of the Federal Arbitration Act.

Assuming, *arguendo*, that the Discrete Damages can somehow be validly regarded as prejudgment interest, and putting aside the fact that applying the Section 11 Interest Rate as the prejudgment interest rate violates the very purpose of prejudgment interest—to compensate a party for the loss of use of money that the party otherwise would have earned had he not been unjustly discharged—the Panel materially miscalculated this prejudgment interest.

#### 1. The SMA Award Failed to Calculate Interest on MMX's Damages, Which Accrued Two Years before Fluviomar's Damages

The SMA Award recognized Fluviomar's 2007-2008 shortliftings as breaches of the COA. Under New York law, "prejudgment interest shall be recovered upon a sum awarded because of a breach of performance of a contract." *NML Capital v. Republic of Arg.*, 621 F.3d 230, 239 (2d Cir. 2010), *aff'd on certification in* 2011 WL 2567294 (N.Y. June 30, 2011).

---

[8] Alternatively, 9 U.S.C. § 11(b) allows the Court to modify an award "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." Even if the Court does not see fit to vacate the SMA Award under 9 U.S.C. § 10(a)(3) or (4), it is clear for the reasons given above that it must be modified due to the Panel's capricious and irrational award of more than $4 million on a matter not submitted to it. *See, e.g.*, *Hartford Fin. Holdings, Inc. v. Singer*, No. 08 Civ. 2459(PKC), 2010 WL 1838843, at *4 (S.D.N.Y. May 4, 2010). Damages are central to the merits of a contract claim, and MMX was not afforded the opportunity to argue on the merits of awarding the Discrete Damages. As such, the Court may, and should, modify the SMA Award under Section 11(b) if it declines to vacate under Section 10 of the Federal Arbitration Act.

However, in calculating the final award, the Panel added all damages owed from MMX to Fluviomar minus all damages Fluviomar owed MMX for its 2007-2008 shortliftings and *then* added interest on the difference between the two. *See* Exh. A at 55. The Panel incorrectly calculated the total award by not awarding any interest to MMX and only applying prejudgment interest to Fluviomar's net recovery. If both MMX and Fluviomar had incurred damages at the same time, this would not be problematic; however, pursuant to the face of the SMA Award, MMX incurred damages two years earlier than Fluviomar, meaning that MMX's losses accrued interest for two years more than Fluviomar's losses. *See* Exh. A at 33-34. The SMA Award should have given MMX credit for this. "[P]rejudgment interest is to be calculated as to each party's respective recoveries prior to any set-off of said recoveries . . . . Having added the interest to each award, only thereafter can a set-off occur." *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, No. 84 Civ. 5791 RO, 1997 WL 470138, at *6 (S.D.N.Y. Aug. 14, 1997).

A Southern District of New York case presents substantially similar facts. That court found that both parties breached the contract, and that "New York law requires prejudgment interest on [both] sums awarded because of breach of performance of a contract." *Studiengesellschaft Kohle mbh v. Novamont Corp.*, 548 F. Supp. 234, 236 (S.D.N.Y. 1981). In awarding damages to both parties, the *Studiengesellschaft* court concluded that:

> SGK is entitled to 10% prejudgment interest for royalties due under the 1974 SGK/Novamont agreement. Interest shall be computed from the dates quarterly payments were due to the present. Novamont is entitled to 10% prejudgment interest on its counterclaim of $181,767.00 from May 6, 1974 to the present.

*Id.* As in *Studiengesellschaft*, the SMA Award found that both MMX and Fluviomar breached the COA. Furthermore, the "payments" between the parties became due at different times. Since, according to the SMA Award, Fluviomar injured MMX by breaching the COA two years before MMX ever breached, the Panel should have calculated interest for the recoveries of both parties,

14

from the time they accrued. The Panel's failure to award MMX prejudgment interest constitutes evident material miscalculation. The SMA Award therefore should be modified by the Court under Section 11(a) of the Federal Arbitration Act (9 U.S.C. § 11).

**2.      The SMA Award Incorrectly Awarded Interest Starting from June 2009 for Fluviomar's Wrongful Termination Award.**

Further, by awarding Fluviomar interest "from June 26, 2009 until the date of this Award," the Panel incorrectly calculated interest and significantly inflated the amount awarded to Fluviomar. As above, "[t]he purpose of a prejudgment interest award in a wrongful termination case is to compensate a plaintiff for the loss of use of money that the plaintiff otherwise would have earned had he not been unjustly discharged." *Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 83 (2d Cir. 1994); *see also State of Kan. v. State of Colo.*, No. 105 ORIGINAL, 2000 WL 34508307, at *40 (U.S. Aug. 31, 2000) (citing *Chandler*). "[I]nterest on a sum awarded as a result of a breach of contract is computed from the earliest date that the claim accrued, 'except that interest upon damages incurred thereafter shall be computed from the date incurred.'" *NML Capital v. Republic of Arg.*, --- N.E.2d ----, 2011 WL 2567294 (N.Y. June 30, 2011) (citing N.Y. C.P.L.R. 5001(a), (b)).[9] Thus, interest for wrongful termination claims where damages incur after the date of termination—such as in this instance where Fluviomar's damages arose after MMX stopped shipping cargo with Fluviomar—must be recalculated according to when damages arose. Indeed, calculating prejudgment interest starting from the date of termination is "excessive." *Chandler*, 44 F.3d at 84 ("Where prejudgment interest is given, it should be assessed upon damages only as they become due . . . . We agree with the

---

[9]   Prejudgment interest is a matter of substantive law and, as such, New York law applies to this matter. *Adrian v. Town of Yorktown*, 620 F.3d 104, 107 (2d Cir. 2010).

defendant that interest should have run from the date of the missed payments, rather than from the date of termination."); *see also Shorter v. Hartford Fin. Servs. Grp., Inc.*, No. 3:03 CV 0149 WIG, 2005 WL 2234507, at *7 (D. Conn. May 31, 2005) (stating that interest "should only be based upon the back pay due as of a particular point in time . . ."); *Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) ("Because NatWest would not have paid Reilly that $2.054 million on one fixed date, however, the district court should award interest from a date to be determined in accordance with New York law.").

Since the COA called for shipments and payments in 2009 and 2010 and Fluviomar incurred damages after the date of termination, the Panel erred by computing the entirety of the interest from June 26, 2009. The Panel should have calculated interest to account for the fact that damages arose after the date of termination.

As detailed in the accompanying Hart Declaration, the corrected calculation, using the annual Section 11 Interest Rate of 18%, results in a total net award to Fluviomar, including interest, of $13.17 million, which is **$2.02 million less** than the net award calculated by the Panel. Moreover, using the New York statutory rate of 9%—i.e., using an accurate representation of the lost time-value of Fluviomar's damages as Fluviomar's damages are not the result of unpaid invoices—Fluviomar would receive a total net award, including interest, of $12.21 million, which is **$2.98 million less** than the net award calculated by the Panel.[10] If this Court were to determine that modification, rather than vacatur, is appropriate, MMX respectfully submits that the New York Statutory rate of 9% is the correct prejudgment interest rate to apply in this arbitration.

---

[10] See Hart Declaration, ¶ 5.

## IV.   CONCLUSION

For the reasons given above, Plaintiffs respectfully request that the Court vacate the SMA Award on the grounds that (i) the Panel introduced in the SMA Award, without notice, a new count of damages that was never requested; and (ii) failed to provide to the parties the opportunity to be heard on whether such damages should be awarded.  Alternatively, Plaintiffs respectfully request that the Court modify the SMA Award (i) by applying an interest rate to MMX's recovery before the amounts of MMX's and Fluviomar's damages are netted out; and (ii) by computing interest on Fluviomar's recovery to account for damages that had not arisen as of June 26, 2009.  The corrected total award to Fluviomar, applying the 9% New York statutory interest rate, would be $12.21 million, which is **$2.98 million less** than the total award calculated by the Panel to Fluviomar.  Alternatively, applying the Section 11 Interest Rate of 18%, the total award to Fluviomar, after correction, would be $13.17 million, which is **$2.02 million less** than the total award calculated by the Panel.

Dated:  New York, New York
July 20, 2011

GIBSON, DUNN & CRUTCHER LLP

By: _____

Laurence Shore (LS-0518)
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Cyrus Benson (CB-0705)
2-4 Temple Avenue
London EC4Y 0HB
Telephone:  +44 20 7071 4000
Facsimile:  +44 40 7071 4244

*Attorneys for Plaintiffs MMX Corumbá*
*Mineração S.A. and MMX Metálicos*
*Corumbá Ltda.*